## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATIONAL WILDLIFE FEDERATION,

        *Plaintiff*,

        v.

U.S. ARMY CORPS OF ENGINEERS,

        *Defendant*.

No. 21-cv-244 (DLF)

### MEMORANDUM OPINION

In this action, the National Wildlife Federation (Federation) challenges the U.S. Army Corps of Engineers' (Corps) withholding of one document from its Freedom of Information Act (FOIA), 5 U.S.C. § 552, request.  Before the Court are the defendant's Motion for Summary Judgment, Dkt. 9, and the plaintiff's Cross-Motion for Summary Judgment, Dkt. 15.  For the reasons that follow, the Court will deny the defendant's motion and grant the plaintiff's motion in part and deny it in part.

## I.    BACKGROUND

### A.    Statutory and Factual Background

This FOIA request stems from a proposed flood control project in the Pearl River Basin in Mississippi authorized by the Water Resources Development Act of 1986, Pub. L. No. 99-662, § 401(e)(3), 100 Stat. 4082, 4128, 4132.  In 2007, Congress modified this authorization to direct the Secretary of the Army "to construct the project generally in accordance with . . . the 'Pearl River Watershed, Mississippi, Feasibility Study Main Report, Preliminary Draft" after considering whether "the locally preferred plan provides a level of flood damage reduction that is equal to or greater than the level of flood damage reduction provided by the national economic

development plan and . . . is environmentally acceptable and technically feasible."  Water

Resources Development Act of 2007, Pub. L. No. 110-114, § 3104(a)–(c), 121 Stat. 1041, 1134.

If those conditions are met, "the Secretary may construct the project identified as the national

economic development plan, or the locally preferred plan, or some combination thereof" or a

"non-Federal interest may carry out the project."  *Id.* § 3104(c).

A non-Federal interest that wants to propose a local plan "may undertake a federally

authorized feasibility study of [its] proposed water resources development project."  33 U.S.C.

§ 2231(a)(1).  The Secretary must "review each feasibility study" submitted by a non-Federal

interest "for the purpose of determining whether or not the study, and the process under which

the study was developed, each comply with Federal laws and regulations."  *Id.* § 2231(b)(1).  To

facilitate this process, the "non-Federal interest may submit to the Secretary a request that the

Secretary initiate the analyses, reviews, and compliance processes . . . with respect to the

proposed project prior to the non-Federal interest's submission of a feasibility study."  *Id.*

§ 2231(b)(3)(A)(i).  Non-federal interests may pay the Secretary "to undertake reviews,

inspections, certifications, and other activities" in the form of "technical assistance relating to

any aspect of a feasibility study."  *Id.* § 2231(e)(1)–(2).  When the Secretary provides such

technical assistance to a non-Federal interest, it "shall not be considered to be an approval or

endorsement of the feasibility study."  *Id.* § 2231(e)(5)(A).

Here, Rankin-Hinds Pearl River Flood and Drainage Control District (Rankin-Hinds),  a

non-Federal interest, prepared an Integrated Draft Feasibility Study and Environmental Impact

Statement (Draft Study) for a local project in the Pearl River Basin.  Def.'s Statement of

Undisputed Material Facts ¶ 4, Dkt. 9-2; Pl.'s Statement of Additional Undisputed Facts ¶ 2,

Dkt. 14-1.[1]  "Rankin-Hinds is a political subdivision of the State of Mississippi, organized" to

"achiev[e] the goals of flood control, conservation, and development of lands and property for

the general health and welfare of the residents within [the] district."  Def.'s Mot. for Summ. J.

Ex. 4 (Rhoads Decl.) ¶ 1, Dkt. 9-7.  After finishing its Draft Study in 2012, Rankin-Hinds

contracted with the Corps "for a technical review and consultation to ensure that [it] [wa]s in

compliance with federal requirements" and to receive feedback for revisions before submitting a

final Study to the Secretary.  *Id.* ¶¶ 4–5.  Rankin-Hinds published its Draft Study on its website,

where it remains publicly available today.  *Id.* ¶ 15 (citing *Integrated Draft FSEIS Pearl River*

*Flood Management*, Rankin Hinds Pearl River Flood & Drainage Control District,

www.rankinhindsflooddistrict.ms.gov/report (last visited on March 31, 2022)).

The Agency Technical Review (ATR) process consists of eleven steps and is overseen by

a team lead who prepares the final ATR Summary Report.  Def.'s Mot. for Summ. J. Ex. 5

(Thaut Decl.) ¶¶ 4–5, Dkt. 9-8.  The process involves a back-and-forth communication of

comments, questions, and responses by the two parties that lead to edits to the Draft Study by the

party that engaged the Corps.  *Id.* ¶¶ 5, 11–12.  In 2018, while the Corps was reviewing Rankin-

Hinds' Draft Study, the ATR team lead announced his pending retirement.  *Id.* ¶ 14.  In order to

prevent a loss of knowledge, Eric Thaut, Deputy Director in the Flood Risk Management

National Planning Center of Expertise of the Corps, asked the ATR team lead to prepare an in-

progress report to document how the review had been conducted and its current status.  *Id.*  The

team lead prepared the June 2018 Agency Technical Review Summary Report (2018 draft ATR),

---

[1] The Federation does not dispute the Corps' material facts.  *See* Pl.'s Statement of Undisputed
Material Facts, Dkt. 14-1.  The Corps did not file any response to the Federation's additional
facts, so the Court treats them as admitted.  *See, e.g.*, *SEC v. Banner Fund Int'l*, 211 F.3d 602,
616 (D.C. Cir. 2000).

which was shared within the Corps and with Rankin-Hinds. *Id.* ¶ 15. In June 2020, the Corps completed their ATR and created the final ATR Summary Report. *Id.*

### B. Procedural History

On May 17, 2019, the Federation submitted a FOIA request to the Corps. Def.'s Statement of Undisputed Material Facts ¶ 8. The Federation requested one document, the Corps' June 2018 draft ATR for Rankin-Hinds' Draft Study regarding its proposed Pearl River Basin flood control project. *Id.* ¶¶ 1, 4, 6, 8. On June 17, 2019, the Corps denied the Federation's FOIA request under Exemption 5. *Id.* ¶ 9. The Federation appealed the denial on July 17, 2019. *Id.* ¶ 10.

The instant litigation commenced on January 27, 2021. *See generally* Compl., Dkt. 1. The Corps filed its answer on March 15, 2021. *See generally* Answer, Dkt. 5. The case proceeded directly to dispositive motions. *See* Joint Status Report, Dkt. 6. The Corps justifies the withholding of the 2018 draft ATR under both Exemptions 4 and 5 of FOIA. *See* Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. at 1, Dkt. 9-3. The cross motions for summary judgment are now ripe for resolution.

## II. LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a federal agency moves for summary judgment in a FOIA case, the court views all facts and inferences in the light most favorable to the requester, and the agency bears the burden of showing that it complied with FOIA. *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

To prevail under Rule 56, a federal agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the [FOIA's] inspection requirements." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam) (citation omitted).  The agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents," *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983), and must also explain why any of the nine enumerated exemptions listed in 5 U.S.C. § 552(b) apply to withheld information, *see Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006); *see also Mobley v. CIA*, 806 F.3d 568, 580 (D.C. Cir. 2015) (agency bears burden of justifying application of exemptions, "which are exclusive and must be narrowly construed").

"The peculiarities inherent in FOIA litigation, with the responding agencies often in sole possession of requested records and with information searches conducted only by agency personnel, have led federal courts to rely on government affidavits to determine whether the statutory obligations of the FOIA have been met." *Perry*, 684 F.2d at 126.  Agency affidavits are entitled to a presumption of good faith, *see SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and a court may grant summary judgment based on an affidavit if it contains reasonably specific detail and if neither contradictory record evidence nor evidence of bad faith calls it into question, *see Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013).  The "vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

III.    ANALYSIS

    A.    FOIA Exemption 4

Exemption 4 exempts from disclosure "trade secrets and commercial or financial information obtained from a person" that are "privileged or confidential."  5 U.S.C. § 552(b)(4).  Both parties appear to agree that the information was "obtained from a person," so their dispute centers on (1) whether the information withheld is "commercial" and (2) whether it is "confidential."  *See* Pl.'s Opp'n at 14; Def.'s Mem. at 22–23.  The information withheld by the government under this exemption "concerns the information in the draft Feasibility Study created by Rankin-Hinds and provided, pursuant to statutory authority and contract, to" the Corps.  Def.'s Mem. at 23.

    To withhold this information under Exemption 4, the Corps must show that the information is "confidential."  *See Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983).  The Supreme Court has explained that "[t]he term confidential" in the context of FOIA Exemption 4 means "private or secret."  *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2363 (2019) (internal quotation marks omitted).  The Court went on to describe "two conditions that might be required for information communicated to another to be considered confidential."  *Id.*  The first condition is that the information is "customarily kept private, or at least closely held, by the person imparting it."  *Id.*  This means that the information is "known only to a limited few," "not publicly disseminated," or "intended to be held in confidence or kept secret."  *Id.* (citations omitted).  The second condition is whether "the party receiving [the information] provides some assurance that it will remain secret."  *Id.*  The Court did not decide whether both conditions need be met, but it did hold

that "[a]t least the first condition has to be," as "it is hard to see how information could be deemed confidential if its owner shares it freely." *Id.*

The Corps' 2018 draft ATR contains information provided by Rankin-Hinds to the Corps. *See* Rhoads Decl. ¶¶ 6, 8. In determining whether the information withheld was "customarily kept private," the Court looks not at "how the industry as a whole treats the information," but at "how the particular party customarily treats the information." *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144, 148 (D.C. Cir. 2001). The Corps represents that Rankin-Hinds considered "[a]ll aspects of the Project disclosed to" the Corps "to be proprietary information to be protected from improper or authorized disclosure," was "the sole distributor of this proprietary information," and "expected that the same level of confidentiality" from its earlier projects with the Corps "would similarly be extended in the review of the current Project." Rhoads Decl. ¶¶ 6–7; *see also* Def.'s Mem. at 25; Def.'s Opp'n at 8. However, these representations do not address the relevant inquiry—how Rankin-Hinds treated the kind of information it provided to the Corps that the agency then included in its 2018 draft ATR. *See Critical Mass Energy Project v. Nuclear Reg. Comm'n*, 975 F.2d 871, 879 (D.C. Cir. 1992) (en banc) (holding that information voluntarily given to the government must be "of a kind that would customarily not be released to the public by the person from whom it was obtained" to be confidential); *see also Renewable Fuels Ass'n v. EPA*, 519 F. Supp. 3d 1, 11 (D.D.C. 2021) (expressing skepticism that a refinery's "closely held" petition from one year "was customarily and actually treated as private" when petitions from other years had been released). And the declaration by the Chairman of Rankin-Hinds is clear that Rankin-Hinds made (and still makes) some information of that kind public by publishing the Draft Study the Corps reviewed. Rhoads Decl. ¶ 15; *see also Integrated Draft FSEIS Pearl River Flood*

*Management*, Rankin Hinds Pearl River Flood & Drainage Control District,

www.rankinhindsflooddistrict.ms.gov/report (last visited on March 31, 2022).

Nonetheless, it is unclear from the agency's affidavits whether the Corps' 2018 draft

ATR included only information provided by Rankin-Hinds that appeared in its publicly available

Draft Study. *See* Def.'s Reply at 8 ("Mr. Rhoads did not indicate that it was the only source or

that the information published online was the exact information Rankin-Hinds provided to [the

Corps] when drafting the Summary Report. In fact, Mr. Rhoads described the information

provided to [the Corps] as 'a prior draft of a [Feasibility Study] that remained very much under

development at that time.'" (quoting Rhoads Decl. ¶ 11)). If the Corps' 2018 draft ATR includes

additional information provided by Rankin-Hinds that it did not disclose publicly, then the Corps

might be able to make the necessary showing under Exemption 4. But based on the current

record, the Court cannot discern whether the Corps' 2018 draft ATR contains non-public

information provided by Rankin-Hinds.[2] Accordingly, the Court will deny the Corps' motion

without prejudice and order it to file a supplemental declaration. *See, e.g.*, *Heartland All. for

Human Needs & Human Rights v. U.S. Immig. & Customs Enf't*, 406 F. Supp. 3d 90, 124

(D.D.C. 2019) ("order[ing] ICE to provide a supplemental declaration addressing the

deficiencies identified" by the Court); *see also Campbell v. U.S. Dep't of Justice*, 164 F.3d 20,

31 (D.C. Cir. 1998) (explaining that a new declaration "is favored where agency affidavits are

facially inadequate" because "otherwise the district court is effectively left to speculate about"

whether a document qualifies for withholding). The supplemental declaration shall address (1)

---

[2] Even so, the Court is highly skeptical that the 2018 draft ATR contains non-public information given that the brief of *amicus curiae* Rankin-Hinds does not even argue that the document is protected by Exemption 4. *See generally* Br. of *Amicus Curiae* Rankin Hinds in Supp. of the U.S. Army Corps of Engineers, Dkt. 11-1. Therefore, the Court does not address at this time whether the 2018 draft ATR contains commercial information.

whether any information in the 2018 draft ATR was provided by Rankin-Hinds and was not included in the publicly available Draft Study, (2) whether any such non-public information differs in kind from the information in the publicly available Draft Study, (3) whether Rankin-Hinds customarily keeps that kind of information private, (4) whether it is segregable from the publicly released information and the information not provided by Rankin-Hinds, and (5) the specific foreseeable harm of releasing that information.

### B.    FOIA Exemption 5

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption "incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant—including . . . the attorney-client privilege, the work product privilege, and the deliberative process privilege." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (internal quotation marks omitted). To invoke the deliberative process privilege, an agency must show three things. First, "the communication must be 'inter-agency or intra-agency.'" *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001) (quoting 5 U.S.C. § 552(b)(5)). Then, the information withheld must be both "predecisional" and "deliberative." *Loving*, 550 F.3d at 38 (internal quotation marks omitted). A document is "predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'" *Judicial Watch, Inc. v. FDA* , 449 F.3d 141, 151 (D.C. Cir. 2006) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

Facially, it appears that the first condition is not met because the 2018 draft ATR was shared between the Corps, an agency, and Rankin-Hinds, which the Corps concedes "does not

meet the traditional definition of agency." Def.'s Mem. at 12. "Agency" is defined by FOIA to be "each authority of the Government of the United States, whether or not it is within or subject to review by another agency." 5 U.S.C. § 551(1). Rankin-Hinds is a political subdivision of Mississippi, Rhoads Decl. ¶ 1, and does not qualify under the FOIA definition of agency because it is not an authority of the United States government.

Even so, the Corps offers two reasons why Rankin-Hinds should be considered an agency for the purposes of Exemption 5. First, the Corps argues that Rankin-Hinds should be considered "a quasi-federal agency for the Pearl River Flood Control project." Def.'s Mem. at 12. Second, the Corps argues that the "consultant corollary" doctrine brings the relationship between Rankin-Hinds and the Corps within the gambit of Exemption 5. The Court addresses each in turn.

### 1. Quasi-federal agency theory

Although Rankin-Hinds is preparing a plan for a flood control project authorized by Congress, this does not transform Rankin-Hinds into a federal agency. The Corps argues that Rankin-Hinds plays a "federal role" and "work[s] side-by-side with [the Corps] in the deliberative process of the Assistant Secretary" as to this flood control project. Def.'s Mem. at 13. This misconstrues their relationship. The Corps cites no authority for treating the entity of another government as a "quasi-federal agency." And this court has noted "that a state agency is generally not an agency for purposes of FOIA." *People for the Am. Way Found. v. U.S. Dep't of Educ.*, 516 F. Supp. 2d 28, 36 (D.D.C. 2007). Indeed, "agency" is defined as "each authority of the Government *of the United States*," 5 U.S.C. § 551(1) (emphasis added), and FOIA exemptions "are construed narrowly in keeping with [the statute's] presumption in favor of disclosure," *Pub. Citizen*, 598 F.3d at 869; *see also Klamath*, 532 U.S. at 9 ("Statutory

definitions underscore the apparent plainness of [Exemption 5's] text."); *Dow Jones & Co., Inc. v. Dep't of Justice*, 917 F.2d 571, 575 (D.C. Cir. 1990) (declining to expand "inter-agency" to include documents sent by the Department of Justice to Congress); *Shapiro v. U.S. Dep't of Justice*, 969 F. Supp. 2d 18, 35 (D.D.C. 2013) (same as to briefs filed in U.S. courts).  *Cf. Food Marketing Inst.*, 139 S. Ct. at 2363–65 (adhering closely to the text of FOIA in interpreting Exemption 4).

The Corps' novel interpretation is also at odds with the Water Resources Development Act itself.  In contrast to the Corps, a federal entity that could carry out the water project itself, *see* Water Resources Development Act, § 3104(a), (c)(1), 121 Stat. at 1134, Rankin-Hinds is participating in this statutory scheme under the statute's provision for "*non-Federal* interests," Rhoads Decl. ¶¶ 2–3; *see* Water Resources Development Act, § 3104(c)(2), 121 Stat. at 1134. *See also* 33 U.S.C. § 2231 (governing the process for review of non-federal interests' proposals for water resources projects); *id.* § 2232 (governing the process for construction of water resources projects by non-federal interests).  And Rankin-Hinds is not working with the Corps in the Secretary's deliberative process; rather, Rankin-Hinds will be an applicant proposing an alternative to the government's plan—not an advisor helping the Secretary choose between the two.  *See generally* 33 U.S.C. § 2231; Water Resources Development Act of 2007, § 3104(a)–(c), 121 Stat. at 1134.  Considering Rankin-Hinds a "quasi-federal agency" contradicts Congress' placement of review and construction of water resource projects into two categories: federal and non-federal.

In sum, treating Rankin-Hinds as a "quasi-federal" agency would contradict Congress' statutory schemes in two ways.  It would run afoul of the definition enacted in FOIA.  And it would collapse the distinction between federal and non-federal interests in the Water Resources

Development Act.  For both these reasons, the Court rejects the Corps' attempt to expand Exemption 5.

> ### 2.   *Consultant corollary theory*

The Corps' consultant corollary argument fares no better.  Under this doctrine, "records exchanged between an agency and outside consultants qualify as 'intra-agency' for purposes of Exemption 5 if (1) the agency solicited the records from the non-agency party or there exists 'some indicia of a consultant relationship between the outsider and the agency' and (2) the records were 'created for the purpose of aiding the *agency's* deliberative process.'"  *Judicial Watch, Inc. v. U.S. Dep't of State*, 306 F. Supp. 3d 97, 106–07 (D.D.C. 2018) (first quoting *Nat'l Inst. of Military Justice v. U.S. Dep't of Def.*, 512 F. 3d 677, 686–87 (D.C. Cir. 2008); then quoting *Pub. Citizen v. Dep't of Justice*, 111 F.3d 168, 170 (D.C. Cir. 1997) (emphasis in original)).  As the Supreme Court has explained, "the exemption extends to communications between Government agencies and outside consultants *hired by them*."  *Klamath*, 532 U.S. at 10 (emphasis added).  There is no dispute that the Corps did not hire Rankin-Hinds; rather, Rankin-Hinds hired the Corps to be *its* consultant.  *See* Rhoads Decl. ¶ 4; *see generally* Def.'s Mot. for Summ. J. Ex. 1 (Mem. of Agreement Between the Rankin-Hinds Pearl River Flood and Drainage Control District and the Department of the Army, Corps of Engineers), Dkt. 9-4.  Thus, the entities' relationship is not the kind covered by the consultant corollary.

Nonetheless, the Corps argues that the corollary should apply because the relationship between Rankin-Hinds and the Corps is "the exact type of relationship that is contemplated by the exception."  Def.'s Mem. at 13.  But that is not the case.  Here, the relationship is reversed,

and the Corps has cited to no authority applying the corollary in reverse.[3]  And extending this

corollary to the reverse relationship would not be consistent with the justifications the Supreme

Court and the D.C. Circuit have provided for this atextual doctrine.  The D.C. Circuit has

explained that this corollary exists because agencies "often need[] to rely on the opinions and

recommendations of temporary consultants, as well as [their] own employees" and these

"consultations are an integral part of [their] deliberative process."  *Ryan v. Dep't of Justice*, 617

F.2d 781, 789 (D.C. Cir. 1980).  In short, "Exemption 5 permits an agency to protect the

confidentiality of communications from outside the agency so long as those communications are

part and parcel of *the agency's* deliberative process."  *Dow Jones & Co.*, 917 F.2d at 575.  But,

"an outside party is not acting as a consultant for the purposes of Exemption 5 when it

'represent[s] an interest of its own, or the interest of any other client,'" *Judicial Watch*, 306 F.

Supp. 3d at 107 (quoting *Klamath*, 532 U.S. at 11) (alteration in original).  Rather, "[t]he non-

agency actor must seek to advise the *agency* that hired it."  *Id.* (citing *Klamath*, 532 U.S. at 11)

(emphasis in original).  And here, Rankin-Hinds, the non-agency, hired the Corps, the agency, to

advise it and thus further its own interests—namely, the approval and ultimate selection of its

locally preferred plan for the Pearl River water project over the federal government's proposed

---

[3] Although the Corps cites several cases, *see* Def.'s Mem. at 13–14, none of those cases apply
the corollary in reverse, *see Badhwar v. U.S. Dep't of Air Force*, 829 F.2d 182, 184 (D.C. Cir.
1987) ("upholding nondisclosure of statements provided by third-party witnesses to the military
accident investigative boards"); *Gov't Land Bank v. Gen. Servs. Admin.*, 671 F.2d 663, 665 (1st
Cir. 1982) (protecting an appraisal report that GSA, a government agency, solicited from a
professional real estate appraiser); *Hoover v. U.S. Dep't of the Interior*, 611 F.2d 1132, 1138 (5th
Cir. 1980) (same by Interior); *Gov't Accountability Project v. U.S. Dep't of State,* 699 F. Supp.
2d 97, 104 (D.D.C. 2010) (protecting communications of a non-profit organization contracted by
the State Department to provide assistance to another non-profit); *Citizens for Resp. & Ethics in
Washington v. U.S. Dep't of Homeland Sec.*, 514 F. Supp. 2d 36, 44 (D.D.C. 2007) (protecting
material drafted by contractors hired to research and develop FEMA's "catastrophic planning"
initiatives)

national economic development plan.  *See* Water Resources Development Act of 2007, Pub. L.

No. 110-114, § 3104(a)–(c), 121 Stat. 1041, 1134.  Thus, the relationship is not akin to the

relationship contemplated by the consultant corollary, and the Court will not extend it.[4]

Because Rankin-Hinds does not qualify as an agency under Exemption 5, the Corps' may

not withhold the 2018 draft ATR under Exemption 5.[5]

## CONCLUSION

For the foregoing reasons, the defendant's Motion for Summary Judgment is denied and

the plaintiff's Cross-Motion for Summary Judgment is granted in part and denied in part.  A

separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

March 31, 2021

---

[4] The Court further concludes that the eventual presentation of the final Feasibility Study to the Secretary for review will not, as the Corps suggests, *see* Def.'s Mem. at 14 (citing 33 U.S.C. § 2231(a)(1)), turn Rankin-Hinds into a consultant.  This is because Rankin-Hinds will be an applicant proposing an alternative to the government's plan—not an advisor helping the Secretary choose between the two.  *See generally* 33 U.S.C. § 2231; Water Resources Development Act of 2007, § 3104(a)–(c), 121 Stat. at 1134.

[5] Given that the Rankin-Hinds is not an agency under Exemption 5, the Court need not address whether the 2018 draft ATR satisfies the other two requirements of the exemption.